**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| TIYACTE HARRIS, | Case No. 2:16-cv-02891-APG-DJA |
| Petitioner, | **Order Denying**<br>**28 U.S.C. § 2254 Petition** |
| v. | **[ECF No. 49]** |
| NATALIE WOOD, et al., | |
| Respondents. | |

Petitioner Tiyacte Harris was convicted in Nevada state court of assault with a deadly weapon and received a suspended sentence of 16 to 48 months. He has filed a counseled fourth amended petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 49. The remaining ground in the Petition alleges that Harris received ineffective assistance of counsel in connection with his decision to plead guilty. For the reasons discussed below, I deny the Petition and a certificate of appealability.

## I.     BACKGROUND[1]

On September 4, 2013, Ladareo Guzman, a security officer at the Harley Davidson Café in Las Vegas, Nevada, reported that Harris approached him and demanded his cell phone. ECF No. 40-1. When Guzman refused, Harris "pulled out a pair of handcuffs and told [Guzman] to give him [his] cell phone or he was going to fuck [him] up." *Id*. Harris put the handcuffs "around his fist and tried to punch [Guzman]." *Id*. Guzman and Harris started fighting, and Guzman hit Harris in the jaw. *Id*. Harris left but later returned with an open box cutter. *Id*. Guzman's co-worker, Ronny Angelini, and Guzman called the police, and Harris left. *Id*.

---

[1]I make no credibility findings or other factual findings regarding the truth or falsity of the information from the state court. My summary is merely a backdrop to my consideration of the issues presented in the Petition.

Police located Harris with a box cutter, handcuffs, and "minor cuts on the top of [his] head." ECF No. 11-1 at 11.  Guzman and Angelini both identified Harris as the individual who had threatened them with the box cutter. *Id*. at 12.  Police noted that Guzman had cuts and abrasions on his face, head, neck, and chest. *Id*.  After being given his *Miranda* warnings, Harris told police that Guzman had attacked him first. *Id*. at 13.

On September 6, 2013, Harris was originally charged with battery with intent to commit a crime, battery with use of a deadly weapon, two counts of assault with a deadly weapon, and attempted robbery. ECF No. 11-3.  Harris agreed to plead guilty to one count of assault with a deadly weapon in return for the prosecution making no recommendation at sentencing. ECF Nos. 11-9 at 4; 11-10.  At his arraignment, Harris was canvassed and pleaded guilty. ECF No. 11-9 at 5.  After pleading guilty, Harris's counsel requested that Harris be released on his own recognizance. *See id*. at 8.  During his counsel's argument on the motion for release, Harris stated, "[s]elf-defense." *Id*. at 11.  The judge responded, "[i]f you want to say this is self-defense[,] I cannot accept this plea.  Do you understand that?  If you believe this is self-defense[,] we're going to set it down for trial." *Id*.  The judge then asked Harris, "[i]s that what you believe or are you accepting responsibility that you committed the crime of assault with a deadly weapon?" *Id*.  Harris did not respond, and the judge withdrew Harris's plea and reset the hearing. *Id*. at 11–12.

At the continued hearing a week later, the court canvassed Harris, and Harris again pleaded guilty to assault with a deadly weapon. ECF No. 11-11 at 4.  After his continued arraignment, Harris moved to dismiss his counsel and to withdraw his guilty plea, explaining that his was innocent, he had inadequate time to prepare his defense, and his counsel coerced him into taking a plea deal. ECF Nos. 11-12, 11-13.  At his sentencing hearing, Harris withdrew these

two motions. ECF No. 11-2 at 12.  The judge entered a suspended sentence of 16 to 48 months,

placing Harris on probation. ECF No. 11-14.  Harris's judgment of conviction was entered on

December 17, 2013. *Id*.  Harris did not appeal.

Harris filed a state post-conviction petition on December 16, 2014 (2014 Petition). ECF

No. 11-16.  At the hearing on the 2014 Petition, the state district judge told Harris that they could

not grant his petition because he was out of custody and on probation:

> A couple things, to begin with, under Nevada statutes, writs
> of habeas corpus are filed by people that are incarcerated.  You're
> confined.  You're detained.  You're committed somewhere.  You're
> restrained in some fashion.  And a (sic) habeas corpus relief kind of
> addresses the reasons for that confinement.  Not, you're out of
> custody and kind of want somebody to go back and look at the deal
> that you entered into and whether your attorney did what they should
> have or not.
>
> So I can't really grant this.  It's not even in the form that's
> required by statute if you wanted to pursue habeas corpus relief.  It
> looks to me like what you're really kind of getting at is you want to
> withdraw the plea that was entered.  So there is, you know, you can
> try and file a motion in that regard if you want.  But it's just a motion
> to withdraw plea.  It's not a habeas corpus petition, okay?

ECF No. 11-21 at 3.  The judge did not enter a written order denying Harris's first state post-

conviction petition.

As instructed, Harris filed a motion for post-conviction relief. ECF No. 11-24.  At the

hearing on the motion, the judge orally denied it, "noting there [was] no manifest injustice to

withdraw plea." ECF No. 11-2 at 18.

Harris eventually pursued a second round of state post-conviction proceedings, and the

Nevada Court of Appeals noted that Harris's 2014 Petition was still pending because the state

court "never filed a written order finally disposing of it." ECF No. 12-28 at 3 n.2.  Regarding his

2014 Petition, Harris filed a *pro se* motion for appointment of counsel and for leave to file a

supplemental petition on August 6, 2020. ECF No. 47-3.  The state court denied the motion and request for leave to file a supplemental petition. ECF No. 47-6.  On February 22, 2021, the state court issued a formal written order denying the 2014 Petition on the merits. ECF No. 47-10. Harris appealed, and the Nevada Court of Appeals affirmed. ECF No. 47-12.

On April 6, 2022, Harris filed his instant Petition. ECF No. 49.  The respondents moved to dismiss Harris's Petition as unexhausted. ECF No. 50.  I granted the motion in part, dismissing ground 1 as unexhausted and procedurally defaulted. ECF No. 55.  I also found that ground 2 is technically exhausted but procedurally defaulted, but I deferred consideration of whether Harris can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome the procedural default until after the filing of an answer and reply. *Id*.  The respondents answered the Petition and Harris replied. ECF Nos. 61, 66.

## II.   GOVERNING STANDARD OF REVIEW

The standard of review generally applicable in habeas corpus cases is set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court

confronts a set of facts that are materially indistinguishable from a decision of [the Supreme]

Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an

unreasonable application of clearly established Supreme Court precedent within the meaning of

28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the

Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's

case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause

requires the state court decision to be more than incorrect or erroneous.  The state court's

application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*,

529 U.S. at 409–10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so

long as 'fairminded jurists could disagree' on the correctness of the state court's decision."

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652,

664 (2004)).  The Supreme Court has stated "that even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75);

*see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to

meet" and "highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt" (internal quotation marks and citations

omitted)).

## III.    DISCUSSION

In ground 2, Harris alleges that he received ineffective assistance from his counsel in

connection with his decision to plead guilty, in violation of his rights under the Fifth, Sixth, and

5

Fourteenth Amendments. ECF No. 49 at 6.  Harris contends that his counsel failed to advise him about the ways the following evidence would have supported a successful self-defense theory at trial or would have shown flaws in the prosecution's case:

(1) the photo of him showed a bleeding head injury but the photo of Guzman showed only minor scratches, suggesting that Guzman was the initial attacker,

(2) the declaration of arrest was inconsistent because it suggested that his head injuries were minor but also that the officer requested medical units to treat him,

(3) he already had two cells phones in his possession when he was arrested, making the prosecution's theory that he tried to steal Guzman's cell phone illogical,

(4) the declaration of arrest provided that the interview room had audio and video recording, but no such recordings or transcripts were later available, implying that such recordings were never made,

(5) there were no independent witnesses to the incident to corroborate the victims' accounts,

(6) Guzman's written statement stated that Harris *tried* to hit him, thereby making the battery counts unsupported by the evidence, and

(7) Guzman provided in his written statement that he hit Harris in the jaw, but the pictures showed injuries to the top of Harris's head. *Id*. at 7–11.

### A.    Procedural default

As previously noted, I determined that ground 2 was technically exhausted and procedurally defaulted, and I deferred consideration of Harris's cause and prejudice arguments under *Martinez* until the time of merits determination. ECF No. 55.  Generally, to overcome a procedural default based upon the actual or projected application of an adequate and independent

state law procedural bar, a federal petitioner must show: (a) cause for the procedural default and actual prejudice from the alleged violation of federal law; or (b) that a fundamental miscarriage of justice will result in the absence of review, based on a sufficient showing of actual factual innocence. *See Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir. 2003).  Under *Martinez*, a petitioner can demonstrate cause to potentially overcome the procedural default of a claim of ineffective assistance of trial counsel by demonstrating that either (a) he had no counsel during the state postconviction proceedings or (b) such counsel was ineffective.  Here, Harris did not have counsel during his state postconviction proceedings. *See* ECF Nos. 61 at 14, 66 at 21.

To demonstrate "prejudice" under *Martinez*, the petitioner must show that the defaulted claim of ineffective assistance of trial counsel is a "substantial" claim.  A claim is "substantial" for purposes of *Martinez* if it has "some merit," which refers to a claim that would warrant issuance of a certificate of appealability. *Ramirez v. Ryan*, 937 F.3d 1230, 1241 (9th Cir. 2019). In pertinent part, a claim would warrant issuance of a certificate of appealability, and thus is "substantial" for purposes of *Martinez*, if reasonable jurists could debate the proper disposition of the claim, or the issue presented is adequate to deserve encouragement to proceed further. This standard does not require a showing that the claim will succeed, but instead only that its proper disposition could be debated among reasonable jurists. *See generally Miller-El v. Cockrell*, 537 US. 322, 336–38 (2003).

The determination of whether Harris can demonstrate prejudice under *Martinez* is made *de novo*. *See Ramirez*, 937 F.3d at 1243–44.  If he does so, the claim is then reviewed *de novo* on the merits. *See Dickins v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

/ / / /

/ / / /

**B.      Standard for an ineffective assistance of counsel claim**

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that counsel's "representation fell below an objective standard of reasonableness," and (2) that counsel's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).  A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.  The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.  To establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id*. at 693.  Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

When the ineffective assistance of counsel claim is based "[i]n the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004).  As such, "[t]o succeed, the defendant must show that counsel's assistance was not within the range of competence demanded of counsel in criminal cases." *Id*. at 979–80.  And regarding the prejudice prong, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also Lafler v. Cooper*, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the

1   outcome of the plea process would have been different with competent advice.").   Notably,

2   "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative

3   defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on

4   whether the affirmative defense likely would have succeeded at trial." *Hill*, 474 U.S. at 59.

5       **C.      Analysis**

6       Counsel is "required to give the defendant the tools he needs to make an intelligent

7   decision" whether to plead guilty. *Turner v. Calderon*, 281 F.3d 851, 881 (9th Cir. 2002); *see*

8   *also Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986) (explaining that "counsel have a duty to

9   supply criminal defendants with necessary and accurate information" regarding their guilty plea).

10  Harris fails to demonstrate a deficiency on the part of his counsel to give him these tools.

11  Harris's counsel is presumed to have rendered adequate plea advice to Harris, and Harris must

12  rebut that presumption to show that his counsel acted deficiently. *See Dunn v. Reeves*, 141 S.Ct.

13  2405, 2410 (2021) (explaining that the burden of rebutting the presumption that counsel acted

14  reasonably rests on the defendant); *see also Strickland*, 466 U.S. at 688 (explaining that

15  "[j]udicial scrutiny of counsel's performance must be highly deferential").   Beyond Harris's self-

16  serving statements, Harris presents no showing that his counsel failed to give him adequate

17  advice before pleading guilty. *See, e.g., Womack v. Del Papa*, 497 F.3d 998, 1004 (9th Cir. 2007)

18  (rejecting an ineffective assistance of trial counsel claim, in part, because "[o]ther than [the

19  petitioner]'s own self-serving statement, there [was] no evidence that his attorney failed to

20  discuss potential defenses with him"); *Turner*, 281 F.3d at 881 (explaining that the petitioner's

21  "self-serving statement, made years later, that [his counsel] told him that 'this was not a death

22  penalty case' is insufficient to establish that [the petitioner] was unaware of the potential of a

23  death verdict").   Moreover, the record belies Harris's current declaration that his counsel failed

9

to advise him about raising a self-defense theory at trial or about flaws in the prosecution's case. In his plea agreement, Harris acknowledged that he had "discussed with [his] attorney any possible defenses, defense strategies and circumstances which might be in [his] favor." ECF No. 11-10 at 6.  Accordingly, Harris fails to demonstrate that his counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

And even if I were to give undoubted credence to Harris's self-serving declaration that his counsel acted deficiently, Harris fails to demonstrate prejudice.  I acknowledge that Harris vacillated about pleading guilty.  However, the fact that Harris received a substantial benefit from the plea-bargaining process negates his current declaration that he would have insisted on going to trial absent his counsel's alleged lack of adequate pre-plea advice.  Because of the plea bargain, Harris was able to prevent the prosecution from making a recommendation at sentencing which resulted, at least in part, in him receiving probation.  Additionally, Harris fails to demonstrate that the facts supposedly supporting a self-defense theory and theoretical flaws in the prosecution's case would have been successful at trial. *See Hill*, 474 U.S. at 59.  To the contrary:

-the extent of injuries on Guzman versus Harris does not suggest who was the initial attacker given that they were in a fight;

-the fact that the police requested medical units to treat Harris is not necessarily inconsistent with Harris only having minor injuries given that he was bleeding from the head;

-Harris having two cell phones does not make it illogical that he would try to steal Guzman's cell phone;

-the absence of audio or video recordings of Harris's police interview turned over during the federal discovery process many years after Harris's criminal case was concluded does not necessarily undermine the police interview or police investigation;

-the lack of witness corroboration was not crucial to the prosecution's case;

-Guzman's statement that Harris tried to hit him was only apparently regarding Harris's first punch before the two started fighting; and

-Guzman's inclusion of the fact that he hit Harris in the jaw was not necessarily exhaustive of all the hits Harris sustained during their fight.

Based on the record, Harris's ineffective assistance of counsel claim is not substantial.  Because Harris fails to demonstrate requisite prejudice necessary to overcome the procedural default of ground 2, ground 2 is dismissed.

## IV.    MOTION FOR AN EVIDENTIARY HEARING

Harris requests that I conduct an evidentiary hearing. ECF No. 67.  But he fails to explain what evidence would be presented at an evidentiary hearing other than his own testimony in support of his declaration.  Also, I have already determined that Harris is not entitled to relief, and neither further factual development nor any evidence that may be proffered at an evidentiary hearing would affect my reasons for denying relief. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").  Finally, the Supreme Court has held that "a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel" unless the prisoner can satisfy 28 U.S.C. § 2254(e)(2)'s stringent requirements under AEDPA. *Shinn v. Ramirez*, 142 S.Ct. 1718, 1734

1  (2022).  Harris cannot satisfy these requirements.  *See* 28 U.S.C. § 2254(e)(2).  I deny his

2  request for an evidentiary hearing.

3  **V.      CERTIFICATE OF APPEALABILITY**

4          This is a final order adverse to Harris.  Rule 11 of the Rules Governing Section 2254

5  Cases requires me to issue or deny a certificate of appealability (COA).  I have *sua sponte*

6  evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28 U.S.C.

7  § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002).  A COA may issue only

8  when the petitioner "has made a substantial showing of the denial of a constitutional right." 28

9  U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must

10  demonstrate that reasonable jurists would find the district court's assessment of the constitutional

11  claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v.*

12  *Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Applying these standards, I find that a certificate of

13  appealability is unwarranted.

14  **VI.      CONCLUSION**

15          I THEREFORE ORDER that the fourth amended petition for a writ of habeas corpus

16  under 28 U.S.C. § 2254 **[ECF No. 49] is denied**.

17          I FURTHER ORDER that the motion for an evidentiary hearing **[ECF No. 67] is denied**.

18          I FURTHER ORDER that a certificate of appealability is denied.

19          I FURTHER ORDER the Clerk of Court to enter judgment accordingly and close this

20  case.

21          Dated: May 23, 2023.

22          _____

            ANDREW P. GORDON
23          UNITED STATES DISTRICT JUDGE

12